

*T. W. Davis, Grace W. Tellier* and *Harry W. Meek,* for appellants.

*Lowell W. Taylor,* for appellees.

HOLT, J. March 16, 1931, the Lyndonville Savings Bank & Trust Company of Vermont, through foreclosure, obtained a deficiency judgment of $15,000 against Z. T. Bragg and wife. A deficiency judgment of $16,600 in another foreclosure suit was obtained on the same date by the Ottauquechee Savings Bank against Bragg and wife. These judgment liens remained in force for the statutory period of three years and were revived for a further period of three years from March 16, 1934.

March 1, 1932, the Lyndonville Bank assigned its judgment lien to C. A. Gibson. In October, 1936, the Lyndonville Bank and C. A. Gibson caused execution to issue on their judgment against certain pieces of land on which the Lyndonville Bank claimed a prior lien by virtue of its judgment of March 16, 1931.

October 3, 1936, Howard Curlin, sheriff of Critten-den county, gave notice that he had levied execution against these lands and that they would be sold on Octo-ber 28, 1936, for the satisfaction of the deficiency judg-ment of the bank and Gibson.

October 19, 1936, appellees, West Memphis Realty Company and Eunice Band Mill Company, filed suit in the Crittenden chancery court seeking to enjoin the bank and Gibson in their attempt to subject the lands to the satisfaction of their liens. They allege that the West Memphis Realty Company is the owner of certain lands thereinafter described by virtue of a warranty deed exe-cuted by Z. T. Bragg and wife to it under date of March 5, 1931, and recorded April 25, 1931; that this deed was delivered to West Memphis Realty Company by Bragg and wife on March 5, 1931, and further that among the lands described and alleged to have been conveyed by said deed are the lands covered by defendants' writ and levy of execution above set out.

It is further alleged that on March 5, 1931, the West Memphis Realty Company gave Lowell W. Taylor, trustee for Eunice Band Mill Company, a deed of trust covering the lands described to secure a certain indebted-ness, and that this deed of trust was recorded April 25, 1931, the same date the Bragg deed was recorded.

The complaint further alleges that all of the lands levied upon and described in said notice of sale are a part of the lands belonging to West Memphis Realty Company and mortgaged by it to Eunice Band Mill Company; that Gibson and Lyndonville Bank have no legal or equitable interest or claim in or lien against the lands levied upon or any right to subject these lands to their lien for the reason that said judgment was not ren-dered until after the West Memphis Realty Company had acquired title to all of said lands under its warranty deed dated March 5, 1931, from Bragg and wife; and that Bragg and wife had no legal or equitable interest in the lands which would be subject to any lien which might have been created in favor of the bank or Gibson by vir-tue of the judgment rendered on March 16, 1931.

Appellees also sought injunctive relief against the other bank and Gibson, assignee. This relief was sought against the Ottauquechee Bank in anticipation that it would attempt to subject the same lands to the payment of its judgment lien obtained on March 16, 1931. The latter bank, however, was not a party to the execution which appellees seek to enjoin.

October 19, 1936, upon the presentation to the court of appellees' petition for an injunction, on *ex parte* showing, the court granted a temporary restraining order. Thereafter appellants answered and, upon final hearing, the court permanently restrained and enjoined the Lyndonville Bank, C. A. Gibson, and Sheriff Curlin, and the other defendants, from proceeding with the execution sale of the lands in question. From this decree, the Lyndonville Bank and C. A. Gibson have appealed, and appellees have cross-appealed.

The sole question for review here is the one of fact and is stated by appellees in their brief in the following language: "It is a matter of record that these judgments were rendered on March 16th, 1931, and the only issue presented in this lawsuit is whether the deed from Z. T. Bragg and his wife was executed and delivered prior to March 16th, 1931, the day on which the judgments now held by the banks were rendered. The problem to be determined is one of fact and not of law."

At the outset it may be said that appellants concede that if this deed were executed and delivered prior to the rendition of their judgments, the title of the grantee under such deed would be superior to appellants' judgment liens even though the deed may not have been recorded until after the rendition of these judgments. This is the rule laid down in the case of *Snow Bros. Hardware Co.* v. *Ellis,* 180 Ark. 238, 21 S. W. 2d 162.

The case comes to us for trial *de novo.*

It is earnestly contended by appellants here that the findings of the chancellor upon which he based his decree are not supported by a preponderance of the testimony. We proceed, therefore, to look to the testimony in an effort to determine this issue.

It appears from the record that Z. T. Bragg owed large sums of money, was in financial straits, and was making a desperate effort to satisfy his creditors. At the time of the execution and delivery of the deed in question, he and his wife were having marital troubles. She had left him, moved to Mississippi, and they were ultimately divorced. They are not parties to this lawsuit.

It is the insistence of appellants that the deed in question executed by Bragg and wife was not actually delivered until after March 20, 1931, although it appears to have been executed by Bragg on March 5, 1931. Appellees insist that the deed was actually executed on March 5, 1931, by Bragg and wife, and delivered to appellee, West Memphis Realty Company, on March 9, 1931.

Z. T. Bragg, on behalf of appellants, testified that in February, 1931, he carried the deed in question to his wife in Mississippi to secure her signature, but that when he presented it ". . . she would not sign it, and I brought it back. And then I had instructions from Mr. Sweet, or Mr. Taylor, or maybe all of them, to go and get it signed. And I carried it back down there on that day that is there. "Q. What date? A. That is the 5th. Q. 5th of March, 1931? A. I believe it was on Thursday. Now, I carried it to her to get her to sign it, and she wouldn't sign it, but she would not say she would not sign it. She just would not say anything about it. The notary public which handled all of the papers which we had signed—there was a lot of them, I was there two or three days—I went before him in the afternoon and signed it and left it there with instructions that maybe she would be up later that evening and sign it if I could ever convince her. Well, she didn't do it, and I came home. I was in the habit of going down there and staying a day or two and then coming back to work.

"Q. Your family and home was Utica, Mississippi, at this time? A. Yes, sir. I came home and went back the following week-end, and I pleaded with her to get her to sign it, telling her that I thought there was going to be a decree issued against me at the next term of

court, which was on the 16th, but we might be able to save money out of it if she would sign, we might hedge it and cut Cecil off over here. Q. You refer to Mr. Gibson, the agent for the bank? A. Yes. Well, she wouldn't do it then, and then the following week-end I went home, on the week-end, and she refused to sign it then. And I told her, I says, 'Well, I don't know whether it would do any good, but it couldn't hurt, because it's all over now, anyhow. The decree is issued for the judgment. But if you sign it, we might be able to get by with it.' Well, sometime the following week she sent me the paper signed. Q. When did you receive the papers with respect to the date of the judgment in March 16, 1931? A. Some time after the 20th of March, after the decree had been issued. I went home the week-end after it had been issued, and I got it the following week. Q. After you received it, what did you do with it, the deed? A. I gave it to Mr. Sweet. I would not be sure that Mr. Taylor was there, but Mr. Sweet took it and he was waiting for it."

We quote further from Bragg's testimony:

"Q. In his deposition taken on behalf of the plaintiff, on page 14, Mr. Sweet testified as follows: 'Q. And after all the transactions,—the documents had been executed, I believe you say there was a final consummation by delivery of the deed to the West Memphis Realty Company from Z. T. Bragg and his wife, on the 9th day of March, 1931? A. Yes, sir. Q. And the execution and delivery of the deed of trust to me [that is Mr. Taylor asking the questions] on the same date? A. Yes, sir.' Q. Was the deed in fact delivered on the 9th day of March, 1931, by you, or anyone for you, to the West Memphis Realty Company? A. No, sir. Q. Is the statement which I read to you, made by Mr. Sweet, true or untrue? A. That is not true."

M. B. Curry, Bragg's bookkeeper, testified that Bragg went to Mississippi more than once to procure Mrs. Bragg's signature to the deed; that they were trying to get it executed before March 16, 1931, and (quoting from his testimony): "Q. . . . Do you know

anything about when Mr. Bragg obtained Mrs. Bragg's signature to this deed, and when it was delivered to the West Memphis Realty Company, in reference to the date of a certain judgment dated March 16, 1931, in favor of the Lyndonville Savings Bank, . . .? A. I don't recall the dates,—the exact dates, but it was around the latter part of March. . . .

"Q. Do you know when he brought it (the deed) back in reference to the date of the judgment I have spoken of? A. Yes. Q. Was it before or after? A. After. Q. Do you know how long after? A. No, sir. Q. How do you know? A. Well, I was in a position to know, and was very much interested in it being brought back. . . . .Q. Your answer is that all you know about when the deeds were signed, and how many trips he made to Mississippi, was what he told you? A. He left to go to Mississippi, and he would come back, and I would ask him about it, and he would not deliver the deed in his office. . . . Q. So, the only thing you know about what he did in Mississippi was what he told you? A. That is right.''

On behalf of appellees, E. E. Sweet testified that the deed in question was delivered to an officer of the West Memphis Realty Company on March 9, 1931, and (quoting from his testimony):

"Q. And after all of the transactions,—the documents had been executed, I believe you say there was a final consummation by delivery of the deed to the West Memphis Realty Company from Z. T. Bragg and his wife on the 9th day of March, 1931? A. Yes, sir. Q. And the execution and delivery of the trust deed to me [Mr. Taylor asking the question] on the same date? A. Yes, sir. Q. It appears from the instrument that you have put in evidence here that the deed and trust deed were not recorded until April 25th, 1931. Is there any particular reason that you know of for the delay in recording these instruments? A. Nothing except the amount of physical work that had to be completed.''

And on cross-examination Sweet testified: "Q. Were you present when they were delivered? A. I

made a notation on them. If you will look at the Bragg deed, you will see the notation that it was delivered to the West Memphis Realty Company on March 9th. I put it there in pencil in my own handwriting. I made a memorandum on the bottom of the deed, the day it was delivered. That is my handwriting. Right there (indicating), March 9th, 1931.'' Sweet further stated that the purpose he had in making the memorandum on the deed was to note the day it was delivered to the West Memphis Realty Company.

Thayer May, president of the Eunice Band Mill Company, testified that he was constructing a large sawmill in Louisiana during February and March, 1931, but took time away from his duties there to attend to the execution of certain notes and deeds, and as to the deed in question (quoting from his testimony):

"Q. Now, what about the deed that Mr. and Mrs. Bragg were to execute to the West Memphis Realty Company? Was it executed March 2d, or what happened to it? A. That deed was not executed on March 2d, but it was executed a few days thereafter. I remember the whole thing was completed and consummated prior to March 15th, because we started the new mill operating on March 15th, and had gotten this matter entirely behind me and was through with it and I had returned to Louisiana approximately a week before the new mill started operating, and the first day the mill operated was March 15th. Q. Now you say you had gotten the matter entirely closed and behind you. Did you leave Memphis before Mr. Bragg executed the deed? A. No, I didn't, because until the deeds were signed we didn't know just what they were going to do. . . . Q. Now, as to whether that was March 6th, or March 7th, or March 9th, are you able to say? A. I am not able to give any specific day except that I know that it was in the neighborhood of a week prior to March 15th. That day is well fixed in my mind because it was the starting of the biggest plant we ever had. . . . Q. Well, your statement as to March 15th, 1931, was in effect that the deal and delivery of these deeds had been made prior to March 15th, 1931? A. Approximately a week prior to March

15th, because I know I was home several days before the mill started."

Lowell Taylor, attorney for the Mill Company, testified that he prepared all necessary deeds and papers pursuant to an agreed plan and that all deeds had been signed on March 2, 1931, except the Bragg deed in question; that Bragg made two trips to Mississippi to get his wife's signature; that Bragg returned from his second trip, shortly after March 2, 1931, with the deed signed by himself and wife before a notary public in and for the county of Hinds, state of Mississippi. As to when this deed was delivered, we quote from his testimony:

"I believe that I can state with reasonable certainty that Mr. Bragg brought the deed back from Mississippi and turned it over to me at a conference with Mr. Thayer May and Mr. Earl Sweet on the Monday following his trip to Mississippi, and having checked the calendar, I find that to be March 9th, 1931. At least, I can say that my recollection is reasonably certain about that." He admitted that he waited until April 25, 1931, to have this deed recorded.

W. D. Willis, a former bookkeeper of Z. T. Bragg, and at present manager for the West Memphis Realty Company, testified that under instructions from Thayer May, he began making payments to Mrs. Bragg on March 7, 1931, and (quoting from his testimony): "Q. Now, can you tell us whether these new corporations had been set up and the conveyances made and the transactions all closed and Mr. May had gone back to Louisiana before March 16th? A. Yes, sir. Q. How do you have of fixing that definitely? A. Well, it is all set up on my books and it was all closed up before that date. . . . Q. Have you any distinct recollection of the time Mr. Thayer May returned to Louisiana in March, 1931? A. No, sir. Q. Whether it was in March or April you would not be able to recollect now after all these years? A. I would not; no, sir. Q. And would not attempt to fix any date? A. No, sir. Q. All you are pretending to say is that you think he did return about the time that

you fixed to consummate this deal, as of March 2, 1931?
A. That is a guess. I declare I don't know.''

Appellees' witnesses, J. D. Carmichael, R. A. Long-
mire, and D. C. Simmons, were residents of Utica, Mis-
sissippi, and each of these witnesses testified that they
were personally acquainted with John A. R. Goodwin,
the notary public now deceased, who took the acknowl-
edgment to the deed in controversy, and they stated that
the notary was very meticulous in his handling of ac-
knowledgments and that his certificate and acknowledg-
ment could always be relied on as reflecting the date the
acknowledgment was actually made.

After a careful analysis of this testimony, and other
evidence in the record of some probative force, we have
reached the conclusion that appellants' contention that
the deed of Bragg and wife to the West Memphis Realty
Company in question was not delivered until after March
16, 1931, is sustained by a preponderance of the testi-
mony, and the trial court erred in holding otherwise.

The testimony impressing us as having the greatest
weight is that of Z. T. Bragg, who, along with his wife,
executed the deed in question. His testimony is of that
positive character that must carry conviction. Of all
the witnesses, he was certainly in the best position to
know when the deed was signed and delivered, for it was
he who actually delivered this deed after he and his wife
had executed it. On this record his interest must have
been with appellees rather than with appellants for ap-
pellees were endeavoring to assist him in straightening
out his tangled affairs. He gave positive testimony as
to his many trips to Mississippi to secure the signature
of an estranged wife. While he signed the deed before
a notary public promptly on March 5, 1931, he was un-
able to induce his wife to sign on that day. The deed was
left with the notary and her signature finally secured
some weeks later after several trips and much pleading
on the part of the husband. After signing the deed,
Mrs. Bragg forwarded it to her husband and it was
received by him ''sometime after the 20th of March,''

after the deficiency judgments had been entered. The testimony of Curry tends to corroborate Bragg.

An analysis of the testimony of appellees' four principal witnesses, Sweet, May, Taylor and Willis indicates much uncertainty as to knowledge on their part of the date the deed was in fact delivered.

While Sweet says the delivery was made on March 9, 1931, he bases his knowledge of the time of delivery on the following penciled notation on the deed made by him, "Closed Monday 3/9/31." He testified he was in the habit of making such notations of delivery dates on all instruments delivered to him for the West Memphis Realty Company. While Sweet's testimony discloses that a "real estate trust deed" was delivered to him on March 9th, along with the Bragg deed in question, an examination of this trust deed fails to disclose any notation thereon indicating delivery date.

Lowell Taylor could not be positive but frankly stated "with reasonable certainty that Mr. Bragg brought the deed back from Mississippi and turned it over to me at a conference with Mr. Thayer May and Mr. Earl Sweet on Monday following his trip to Mississippi, and having checked the calendar, I find that to be March 9, 1931. At least, I can say that my recollection is reasonably certain about that."

We think the testimony of Willis and May when analyzed is equally uncertain as to the delivery date of the deed.

Appellees press here with some force that much weight should be given to the acknowledgment on the deed made by Bragg and wife which bears the date of March 5, 1931. An acknowledgment does not import absolute verity. Appellants having contended that Mrs. Bragg did not in fact sign the deed on March 5, 1931, but many days thereafter, the burden was on them to establish this contention. Again an analysis of the testimony convinces us that they have met this burden. The notary, who took the acknowledgment of the Braggs, died before the testimony in this litigation was prepared.

Mrs. Bragg was not produced as a witness by either party.

For the error indicated, the decree is reversed and the cause remanded with directions to dissolve the injunction. Affirmed on cross-appeal.

Opinion delivered December 16, 1940.